S06A0631. SMITH v. SMITH.
(632 SE2d 83)

HINES, Justice.

Curtis Nathaniel Smith II appeals the trial court's denial of his motion to set aside an earlier order directing that he be incarcerated for contempt of court. For the reasons that follow, we reverse.

Curtis Nathaniel Smith II and Stephanie Lauren Smith were divorced in 2000. Ms. Smith was awarded primary physical custody, and Mr. Smith was ordered to pay $900 a month in support for their two children. After he failed to meet this obligation, Ms. Smith moved for contempt. On February 15, 2001, Mr. Smith was found in contempt and incarcerated. He remained in jail until May 1, 2001, when the parties reached an agreement, pursuant to which the court entered an order declaring that Mr. Smith owed $13,500 in back child

support, and that he was to extinguish that debt by paying $1,000 a month through the clerk of court, $900 being his monthly support obligation, and $100 to be applied to the arrears. The order also stated that if he failed to "make a payment of $1,000.00 per month . . . an affidavit shall issue to the effect" and the court would then "execute an Order directing the Sheriff to arrest and incarcerate" Mr. Smith until the balance of the $13,500 arrears is paid.

On January 15, 2005, the clerk of court averred that Mr. Smith had paid nothing to the clerk's office under the release order, and on January 26, 2005, the court entered an order that Mr. Smith be incarcerated until the child support arrearage was paid in full. Mr. Smith moved to set this order aside under OCGA § 9-11-60 (d), asserting that incarcerating him without serving notice or holding a hearing was a violation of due process and constituted a non-amendable defect on the face of the record. On June 30, 2005, the court denied the motion. Mr. Smith filed an application for interlocutory appeal from this order, which this Court granted.

This Court has repeatedly held that "in Georgia, a trial court cannot order incarceration pursuant to a self-effectuating order, regarding future acts, without benefit of a hearing. *Floyd v. Floyd*, 247 Ga. 551 (1), (2) (277 SE2d 658) (1981). See also *Foster v. Foster*, 178 Ga. 791 (5) (174 SE 532) (1934)." *Burke v. Burke*, 263 Ga. 141, 142 (2) (429 SE2d 85) (1993). See also *Baldwin v. Vineyard*, 275 Ga. 134, 135 (2) (562 SE2d 174) (2002). Ms. Smith nonetheless asserts that this is not the sort of self-effectuating order prohibited by these precedents. She contends that the cited cases do not apply because the release order of May 1, 2001, did not authorize incarceration on the basis of her own affidavit, but on that of a court officer based on objective information, and therefore did not "place the keys to the jail" in her own hands. See *Moccia v. Moccia*, 277 Ga. 571, 572 (2) (592 SE2d 664) (2004). First, we note that the language of the order contains no provision requiring a court officer to make the affidavit, and only states that "an affidavit shall issue to the effect" that a payment has not been made. We also note that the record is devoid of any information as to what prompted the clerk of the court to issue his affidavit three and one-half years after the entry of the release order; there was no motion made to the court for such an affidavit, or any notice given that the affidavit was filed with the court.

Even more fundamentally, the order is infirm because it attempts to be self-effectuating as to future acts; Mr. Smith is ordered to be incarcerated for his failure to pay the $1,000 a month ordered in the May 1, 2001 order. Ms. Smith argues that incarceration can properly result on a court officer's affidavit when a contempt hearing has already been had, contempt has been found, an adjudication as to past debts has been made, and future payments are simply the

mechanism by which the contemnor purges himself of the contempt. See *Floyd*, supra at 553-554 (2). While it is the case that in 2001, the court found Mr. Smith in contempt and ordered that he purge himself of that contempt by paying $100 a month for the child support in arrears, we cannot ignore the wording of the order. Mr. Smith was ordered to pay $1,000 in child support each month, $900 of which was to be applied to his ongoing, future, obligation. The order specifically states that incarceration is to result if Mr. Smith "fails to make a payment of $1,000.00 a month"; i.e., a payment the vast majority of which is *not* to purge himself of contempt. Thus, his ordered incarceration was the result of a self-effectuating order regarding future acts, and could not be lawful without a hearing. See *Baldwin*, supra; *Burke*, supra.[1]

The face of the record shows that the court's order that Mr. Smith be incarcerated was based upon an unauthorized provision in its release order. Thus, his motion to set aside the incarceration order under OCGA § 9-11-60 (d) should have been granted.

*Judgment reversed. All the Justices concur, except Hunstein, P. J., who dissents.*

HUNSTEIN, Presiding Justice, dissenting.

I respectfully dissent to the majority's reversal of the June 2005 order in which the trial court denied appellant Curtis Smith II's motion to vacate or set aside the January 2005 ex parte order for his arrest and incarceration. That ex parte order was based on a May 2001 order, from which appellant did not appeal, that held appellant to be $13,500 in arrears in child support; required appellant to pay $100 per month toward the arrearage and $900 per month as current child support to the Carroll County Clerk of Superior Court; and provided that

> in the event that [appellant] fails to make a payment of $1,000.00 per month, on the first of the month the money is due, an affidavit shall issue to the effect, and the Judge of this Honorable Court shall execute an Order directing the Sheriff to arrest and incarcerate [appellant] until the balance of the arrearage is paid in full.

Pursuant to the May 2001 order appellant made one payment instanter. However, 43 months later, the Carroll County Clerk of Supe-

---

[1] Ms. Smith argues that, in any event, Mr. Smith agreed to this procedure when the release order was negotiated. However, this Court has repeatedly stated that a trial court cannot order incarceration based upon a self-effectuating order regarding future acts without a hearing, and the parties cannot by agreement give the trial court a power it cannot exercise.

rior Court executed an affidavit reflecting that "there were no payments made by or on behalf of" appellant from June 2001 to the current date. Appellant was thereafter ordered arrested and incarcerated by the January 2005 ex parte order that reiterated the provisions of the May 2001 order[2] and directed the Sheriff to arrest and incarcerate appellant "until he pays the entire balance of child support arrearage of $13,400." This Court subsequently granted appellant's application for interlocutory appeal of the trial court's denial of his motion to vacate or set aside this ex parte order.

The majority holds that because the payment appellant was required to make included $900 a month for future child support, appellant's arrest and incarceration were improper under case law recognizing that "a trial court cannot order incarceration pursuant to a self-effectuating order, regarding future acts, without benefit of a hearing. [Cits.]" *Burke v. Burke*, 263 Ga. 141, 142 (2) (429 SE2d 85) (1993). While the May 2001 order inartfully referenced the $1,000 per month payment, it is clear that appellant's arrest and incarceration were premised not on his failure to pay the future child support amount of $900 per month, but on his failure to pay the $100 for the already established past due child support arrearage, given the order's explicit provision that appellant's arrest and incarceration would continue "until the balance of the arrearage is paid in full." At the time of the May 2001 order the only arrearage was the $13,500 amount stated in the order. The awkwardness of the wording in the May 2001 order did not prevent the trial court from understanding its clear meaning in January 2005, when it entered the ex parte order that undeniably distinguished between the $100 monthly amount for the past-due arrearage and the $900 monthly amount for future child support when it expressly recognized the payment required of appellant to purge himself was $13,400, rather than the $43,000 that would have been due if the future child support payments had been included. Appellant was not required to pay the $38,700 in child support representing the $900 monthly payments due after May 2001 in order to avoid arrest and incarceration. Rather, it would seem that his obligation to pay that amount was the subject of the trial court's order, contained within the denial of appellant's motion to vacate,

---

[2] The ex parte order provided, in pertinent part, that the May 2001 order required appellant to

continue to pay his regular child support of $900.00 per month and $100.00 per month towards the arrearage of $13,400.00, that said funds should be paid through the Carroll County Clerk of Superior Court, and if [appellant] failed to make these payments, upon the Clerk's issuance of an affidavit attesting to this fact, this Court should execute an Order directing the Sheriff to arrest and incarcerate [appellant] until the balance of the arrearage is paid in full.

that appellant be brought to court on the first non-jury day following his arrest for a hearing on the child support issue.

The record thus does not support the majority's position that appellant was arrested and incarcerated as the result of a self-effectuating order regarding future acts. Rather, appellant was properly arrested and incarcerated for his failure to pay the amount for which he was adjudicated as being in arrears in May 2001. See *Floyd v. Floyd*, 247 Ga. 551 (2) (277 SE2d 658) (1981). Accordingly, I cannot agree with the majority's reversal of the trial court's order properly denying appellant's motion to vacate or set aside the ex parte order for his arrest and incarceration.[3]

DECIDED JUNE 12, 2006.

*Jacquelyn F. Luther*, for appellant.
*Sanders, Haugen & Sears, Walter S. Haugen*, for appellee.

---

[3] Although the majority does not expressly reverse the trial court on any other ground, as to the two items it "notes" in its opinion regarding the affidavit issue, see Majority Opinion, p. 621, I see no problem in the lack of precise identification of the person authorized to make the affidavit required by the May 2001 order, given that the order specifically directed appellant to make his payments "to the Carroll County Clerk of Superior Court" and the affidavit in this case was provided by the individual occupying that position. The majority provides no explanation why it is pertinent to this appeal that "the record is devoid of any information as to what prompted the clerk of the court to issue his affidavit three and one-half years after" the May 2001 order, id., and I can discern no reason why that fact would require reversal of the trial court's denial of appellant's motion.